IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

ANTHONY LEVON MYERS                                                    PETITIONER
Reg. #18351-075

V.                              NO.  2:10-cv-00080 SWW-JWC

T.C. OUTLAW, Warden,                                                   RESPONDENT
FCI, Forrest City, AR

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days after being served with the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the requested hearing before the District Judge was not offered at a hearing before the Magistrate Judge.

3.      An offer of proof stating the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Anthony Levon Myers, an inmate at the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus (doc. 1). Respondent has filed a response (doc. 10), to which Petitioner replied (doc. 13). For the reasons that follow, the petition should be **denied**.

I.

Petitioner is serving a sixty-four-month federal sentence for being a felon in possession of a firearm, arising out of the United States District Court for the Middle District of Tennessee. He alleges that the Bureau of Prisons (BOP) has improperly denied him credit on the sentence for 882 days he served in custody from September 29, 2006, to February 26, 2009, plus 108 days of earned good conduct time.

The following facts are supported by the record.

In October 2005, Petitioner was convicted in Tennessee state court of attempted aggravated burglary, and he was placed on four years of probation.  On September 27, 2006, he was arrested by Tennessee state authorities for being a felon in possession of a handgun, and two days later, for violating his probation.  On December 18, 2006, his state probation was revoked and he was sentenced to four years of imprisonment.  The state felon-in-possession charge was dismissed in lieu of federal prosecution for the offense. (Crook Decl. ¶¶ 4-5 &  att. 1, 2 [doc. 10-1, at 5–9].)[1]

On April 10, 2007, Petitioner was transferred to the physical custody of the United States Marshals Service (USMS) pursuant to a writ of habeas corpus *ad prosequendum* for proceedings related to the federal felon-in-possession charge in the Tennessee federal district court.  On April 12, he was transferred back to state custody with a detainer.  On August 2, 2007, he was again transferred to USMS custody pursuant to a writ of habeas corpus *ad prosequendum* for a status hearing and "all other necessary proceedings" on the federal charge.  (*Id.* att. 3, 4 [doc. 10-1, at 10-13].)[2]  Following entry of a guilty plea, the Tennessee federal district court imposed judgment on January 28, 2008, sentencing him

---

[1]This is the declaration of James D. Crook, a supervisory attorney at the BOP's Designation and Sentence Computation Center (DSCC), along with several attachments.  Attachment 1 is a portion of a presentence investigation report prepared by the United States Probation Office in the Middle District of Tennessee.  Attachment 2 is a DSCC report dated January 22, 2010.

[2]Attachment 3 contains the writs of habeas corpus *ad prosequendum* issued by the United States District Court for the Middle District of Tennessee (Nashville) on April 4, 2007, and July 20, 2007.  The first writ directed the USMS to bring Petitioner from the Metro Detention Center in Nashville, Tennessee, for an initial appearance.  The docket sheet for the Tennessee federal case, *United States v. Myers*, No. 3:07cr00062-1 (M.D. Tenn.), was submitted by Petitioner (doc. 13-1, at 75-79), and it also can be accessed electronically through the court's website.  The docket sheet shows that Petitioner's initial appearance and arraignment was on April 10, 2007, and that he was "to be returned to state custody."  (*Id.* [entries 10, 13].)  Attachment 4 is a USMS prisoner tracking report.

to sixty-four months of imprisonment in BOP custody followed by three years of supervised release.  (*Id.* att. 5 [doc. 10-1, at 14-19].)  The judgment states that the federal court "recommends that Defendant receive credit for time served since September 27, 2006, the date of arrest for this offense." (*Id.* at 15.)  The federal judgment does not address whether the federal sentence was to run concurrent with or consecutive to Petitioner's existing state sentence.  Following his federal sentencing and entry of judgment, Petitioner was returned to state authorities on June 20, 2008, subject to a federal detainer.  (*Id.* att. 4 [doc. 10-1, at 13]; *see* doc. 13-1, at 78-79.)

On February 27, 2009, Petitioner was released from Tennessee state officials due to the expiration of his state probation-violation sentence, and he was transferred to USMS custody awaiting designation to a federal facility.  (*Id.* att. 2, 4, 7 [doc. 10-1, at 9, 13, 22].)  The BOP computed Petitioner's federal sentence as commencing on this date, when he "paroled from [his] state sentence." (*Id.* att. 9 [doc. 10-1, at 25].)  Shortly after his arrival, the BOP prepared a sentence monitoring computation data report, showing 884 days of prior credit time (September 27, 2006, to February 26, 2009), as well as 108 days of earned good conduct time (doc. 1, at 8).  The BOP then sought information from the State of Tennessee regarding any "pretrial or time served credit the inmate above will receive towards his state sentence." (Crook Decl. att. 7 [doc. 10-1, at 22].)  On April 21, 2009, Tennessee authorities advised that Petitioner received credit on his state sentence for the time served from September 29, 2006, to February 27, 2009.  (*Id.*)  The same day, the BOP updated its computation data and certified that Petitioner would receive only two days of credit on his federal sentence (September 27-28, 2006) because the other days had been credited to his state sentence (doc. 1, at 10, 12-13).

4

Petitioner sought relief through the BOP's administrative remedy program, asking that the "882 jail credits along with 108 GCT" be "re-entered into [his] computation data" (doc. 1, at 9-14).[3]  He was unsuccessful at all levels.  On January 21, 2010, the BOP reviewed his case to determine if it was appropriate for a retroactive or *nunc pro tunc* designation of the Tennessee state facility as the place for serving his federal sentence, preparing a "Barden Request Information Worksheet."[4]  The BOP (1) noted that Petitioner had a state sentence imposed on December 18, 2006, (2) noted that the federal sentencing judgment imposed on January 28, 2008, made no recommendation regarding concurrent/consecutive service with his state sentence, (3) noted that the federal court recommended credit for time spent in custody since September 27, 2006, and (4) found him to be "ineligible for consideration due to state sentence being imposed prior to federal sentence."  (Crook Decl., att. 6 [doc. 10-1, at 20-21].)

Petitioner then filed this 28 U.S.C. § 2241 petition, asking this Court to award his "appeal for *nunc pro tunc* and restore to [his federal] sentence" 884 days of jail credit and 108 days of good conduct time earned during that time.  In support, he asserts that it was the opinion of the federal sentencing judge that he receive jail credit from the date of the federal offense.  He further states that the federal court "ordered [him] to the custody" of the USMS on August 2, 2007, and the federal sentence is "superior" to any state sentence.

---

[3]This is documentation of Petitioner's administrative submissions and the BOP's responses. Respondent makes no argument that Petitioner has failed to complete the BOP's administrative remedy process regarding the issues raised here.

[4]As a result of *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990), the BOP considers a request for presentence credit toward a federal sentence for time spent in service of a state sentence as a request for a *nunc pro tunc* designation of a state facility as the place of federal confinement.  BOP Program Statement 5160.05, at 5-7 (accessible at www.bop.gov).

He says he tried to get Tennessee state authorities to suspend his state probation-violation sentence or grant him parole or bond, but was told that he was ineligible because he was under a federal detainer.  Finally, he asks that the Court consider the facility where he served his state probation-violation sentence as the place of imprisonment for his federal sentence.

II.

A.    Presentence Credits.

The United States Attorney General, through the BOP, is responsible for imprisoning federal offenders, designating where their sentences will be served, and determining what credit should be awarded for any presentence custody.  *United States v. Wilson*, 503 U.S. 329, 331, 334-35 (1992); *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006). Computation of credit for time spent in custody before commencement of a federal sentence is governed by 18 U.S.C. § 3585(b), which provides:

> (b) Credit for prior custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

The determination of whether a defendant should be given credit for time served under this statute "is properly left to the Bureau of Prisons" rather than the federal sentencing court,

6

and is made only "after the defendant begins his sentence."  *United States v. Pardue*, 363

F.3d 695, 699 (8th Cir. 2004).

As stated, the BOP computed Petitioner's federal sentence as commencing on

February 27, 2009, when he was paroled from his state sentence and transferred to USMS

custody awaiting designation to a federal facility.  *See* 18 U.S.C. § 3585(a) (a federal

sentence "commences on the date the defendant is received in custody awaiting

transportation to ... the official detention facility at which the sentence is to be served").  In

verifying Petitioner's sentence calculation, the BOP obtained information from the State of

Tennessee showing that Petitioner received credit on his state sentence for time served

from September 29, 2006, to February 27, 2009.  Based on this information, the BOP

determined that he was entitled to only two days of prior custodial credit – from the date

of his arrest for the federal offense until the state credit began (September 27-28, 2006) –

as those two days were not credited to his state sentence.

Under § 3585(b), a defendant can receive credit on a federal sentence only for time

"that has not been credited against another sentence."  The Supreme Court, Congress and

BOP policy have made it clear that the statute prohibits a defendant from receiving "a

double credit for his detention time."  *Wilson*, 503 U.S. at 337; BOP Program Statement

5880.28, at 1-17 (Crook Decl. att. 8 [doc. 10-1, at 23]).  *See also Gurski v. Outlaw*, 358 F.

App'x 770, 770 (8th Cir. 2010) (unpub.) (BOP properly denied credit on federal sentence

for time served on inmate's state sentence); *Potwin v. Sanders*, 231 F. App'x 538, 539 (8th

Cir. 2007) (unpub.) (federal inmate not entitled to credit where "time at issue had been

credited by the State of Texas to his state parole-violation sentence and may not be double

counted"); *United States v. Kramer*, 12 F.3d 130, 132 (8th Cir. 1993) (federal defendant not

entitled to credit for time spent in state custody where he received credit against his state sentence for that period).

Because the record shows without dispute that Petitioner received credit against his state probation-violation sentence for the custodial period in question, the BOP did not abuse its discretion in declining to award him an additional credit against his federal sentence for the same time period.  Even if, as Petitioner argues, he can show he was denied parole, bond or suspension of his state sentence due to a federal detainer, §3585(b) still precludes him from receiving double credit for the time he spent in custody. *See Pratt v. Owens*, Civ. No. 9:08-3865-SB, 2010 WL 93909, at *5 (D.S.C. Jan. 8, 2010) (citing cases); *Anez v. Sherman*, Civ. No. 06-253, 2007 WL 4454744, at *9 (W.D. Pa. Dec. 17, 2007).

Petitioner asserts that it was the expressed intent of the federal sentencing judge that he receive jail credit from the date of the federal offense, September 27, 2006.  This is indicated by specific language in the federal court's judgment as stated, as well as in the federal judge's comments during the sentencing hearing.[5]  However, the judge recognized that, even if he made such a recommendation for prior credit, it was up to the BOP to make the determination:

> Even if I recommend it, of course, Mr. Myers, the Bureau of Prisons will determine what time you should be given credit for.  They have got their own guidelines about that. ... They will make that decision. ... For what it's worth, the court will recommend that the defendant be given credit for all that time.

---

[5]Petitioner submitted a transcript of the Tennessee federal court's sentencing hearing held on January 28, 2008 (doc. 13-1, at 3-73).

(Doc. 13-1, at 69-72.) This understanding was reiterated in February 2010 when, in response to a letter from Petitioner seeking credit for time served, the federal sentencing court entered an order stating, "It is not within the Court's authority to do so" (doc. 13-1, at 79 [entry #44]).   Nothing in the judgment or the sentencing transcript indicates that, at the time he imposed the federal sentence, the federal judge took into account, was asked to consider, or was even aware of, Petitioner's existing, undischarged state sentence for probation-violation, or that the judge knew Petitioner's state sentence was being credited with any of the custodial time at issue.  If a federal court makes a recommendation that a period of time be credited to the federal sentence that is not authorized, "the recommendation may be treated as surplusage and the credit will not be allowed."  BOP Program Statement 5880.28, at 1-27.  Because the full credit recommended by the federal court would be an unauthorized double credit, the BOP properly disregarded the recommendation and disallowed credit for the full period.

     B.   <u>Primary Jurisdiction</u>.

     Petitioner argues that the federal court "ordered [him] to the custody" of the USMS on August 2, 2007, where he stayed for over ten months, and that the federal sentence was "superior" to any state sentence.  Respondent asserts that Petitioner was "temporarily transferred to federal custody" for prosecution on the federal charges but that he was "in the primary custody of Tennessee state authorities" from September 29, 2006, until February 27, 2009.

     When two separate sovereigns exercise jurisdiction over the same person during the same time period, "primary jurisdiction ... is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th

Cir. 2005).  The controlling factor is "actual physical custody" of the accused.  *Id.*  Primary jurisdiction continues until the first sovereign "relinquishes its priority in some way," through release on bail, dismissal of charges, parole, or expiration of sentence.  *Id.*  If, while under the primary jurisdiction of one sovereign, the accused is transferred to the other's jurisdiction to face a charge, "primary jurisdiction is not lost but rather the defendant is considered to be 'on loan' to the other sovereign."  *Id.* at 896-97.  Issuance of a writ of habeas corpus *ad prosequendum*, which is used to obtain custody of a defendant so that he can be prosecuted in the proper jurisdiction, does not alter a defendant's custody status, but merely constitutes a temporary change in the location of his custody.  *Munz v. Michael*, 28 F.3d 795, 798 & n.3 (8th Cir. 1994).

The BOP's policy is consistent with these principles, stating that time spent in federal custody under a writ of habeas corpus *ad prosequendum* from non-federal custody "will not in and of itself be considered for the purpose of crediting presentence time."  BOP Program Statement 5880.28, at 1-20B.  The policy further states: "The primary reason for 'writ' custody is not the federal charge.  The federal court merely 'borrows' the prisoner under the provisions of the writ for secondary custody."  *Id.*

Here, the record shows that Petitioner was in the primary custody of the State of Tennessee during the entire period at issue.  The state first obtained primary jurisdiction when it arrested Petitioner on September 27, 2006, on a felon-in-possession charge.  Two days later, he was arrested on a state probation-violation warrant.  Although the state later dismissed the state felon-in-possession charge in lieu of federal prosecution, that is immaterial as it is undisputed that the state probation-violation charge remained outstanding and that Petitioner remained in the continuous physical custody of state

authorities until August 2, 2007, except for three days in April 2007.  The USMS tracking records confirm that Petitioner was removed from a state facility from April 10 to 12, 2007, and again from August 2, 2007, to June 20, 2008, both times pursuant to a "WHCAP" (writ of habeas corpus *ad prosequendum*), and that he was returned to state custody both times.  The records from the Tennessee federal district court clearly show that Petitioner was taken into federal custody on these dates pursuant to writs of habeas corpus *ad prosequendum*.  His federal judgment of conviction was entered on the court's docket on June 16, 2008,[6] and he was transferred back to state authorities a few days later.  The USMS tracking report states that he was "Ret'd to Metro w/JC Detainer."  Based on this record, the BOP did not abuse its discretion in finding that Petitioner "was simply borrowed ... by the federal government several dates on a federal writ for prosecution [and that] the state continued to maintain their jurisdiction until the completion of [his] state sentence on February 27, 2009, the date [his] federal computation began" (doc. 1, at 10).

The federal docket sheet does show that a status conference was held on August 2, 2007, along with this notation:  "Deft in Federal custody and no longer in state custody" (doc. 13-1, at 77 [entry #21]).  Additionally, the sentencing transcript reflects comments by the federal prosecutor and the judge suggesting that they believed Petitioner was "transferred" to federal jurisdiction on that date (doc. 13-1, at 70-72).  The federal presentence investigation report also states that, on August 2, 2007, Petitioner was "transferred to federal custody and detained."  (Crook Decl., att. 1 [doc. 10-1, at 5, 6].)

---

[6]This is shown on the Tennessee federal court docket sheet (doc. 13-1, at 79 [entry #41]) and the file-marks on the judgment itself (Crook Decl., att. 5 [doc. 10-1, at 14]).

However, physical custody does not necessarily equate with primary jurisdiction. There is no evidence that the BOP designated any facility as the place for service of Petitioner's federal sentence on August 2, 2007, that he was delivered to or awaiting transport to his official federal detention facility at that time,[7] or that the BOP ever considered his federal sentence to be commencing at any time before February 27, 2009. Only the BOP, not the federal sentencing judge, has the authority to determine when a federal sentence commences and designate where that sentence will be served. *United States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 1983 (2009).

Furthermore, regardless of any statement by the federal court or federal officials, only the sovereign having primary jurisdiction has the authority to relinquish that jurisdiction. *See Cole*, 416 F.3d at 897 ("Primary jurisdiction continues until the first sovereign relinquishes its priority in some way."); *Fisher v. Holinka*, 323 F. App'x 451, 453 (7th Cir. 2009) (regardless of BOP's actions, "only the sending authority ... can relinquish primary jurisdiction"); *United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000) (relinquishment of jurisdiction "is an executive, and not a judicial, function"; state's primary jurisdiction can be relinquished only by prosecutor or a representative of the state executive branch). There is no evidence that the proper Tennessee state officials took any action to relinquish primary custody over Petitioner before February 27, 2009. Tennessee officials clearly

---

[7]Petitioner says he was in "federal holding" in Bowling Green, Kentucky, from August 2, 2007, to July 20, 2008. The USMS tracking records show that he was transferred "from CCA Metro" on August 2, 2007, and returned "to Metro" on June 20, 2008. The records also show that he was "boarded" in Warren County, Kentucky, from August 2, 2007, to June 20, 2008. (Crook Decl., att. 4 [doc. 10-1, at 13].) The CCA Metro Detention Facility in Nashville, Tennessee, is run by Corrections Corporation of America. *See* www.nashville-sheriff.net/cca.htm. The Warren County Regional Jail is in Bowling Green. *See* www.warrencountyjail.com. Neither identifies itself as a federal facility, and neither is shown as a federal facility on the BOP's website.

stated that his release on that date was due to "the expiration of his sentence."  (Crook Decl., att. 7 [doc. 10-1, at 22].)  Before then, there was no release on bail or parole, or dismissal of the probation-violation charges.  Following each stint in federal custody, Petitioner was returned to the physical custody of the state.  Tennessee state authorities credited Petitioner's state sentence with the period from September 29, 2006, to February 27, 2009, indicating that they considered him to be in the primary custody of the State of Tennessee during that entire period.

If a prisoner is improperly committed to federal custody when primary jurisdiction actually resides with a state sovereign, the BOP has a governing policy in place.  In such a situation, the BOP has the responsibility to "make every effort to return the inmate to state custody," the return to the state "means that the federal sentence should be considered as **not** having commenced since transfer to the Bureau was in error and the prisoner should have been returned to the state after federal sentencing as a required condition of the federal writ," and "the federal J&C will be lodged as a detainer, through the USMS, with the state authorities."  BOP Program Statement 5160.05, at 11-12 (citing *Crawford v. Jackson*, 589 F.2d 693 (D.C. Cir. 1978)).  These are precisely the steps taken here: Petitioner was returned to state custody and the USMS records show that the federal judgment was lodged as a detainer.   Therefore, even if Petitioner's time in custody from August 2, 2007 to June 20, 2008, is considered an improper commitment to BOP custody, the BOP did not abuse its discretion in failing to find that his federal sentence commenced at that time.  *See Fisher*, 323 F. App'x at 453 (BOP's misclassification of inmate in federal custody pursuant to writ as "designated" inmate did not strip state of primary jurisdiction); *Brown v. Grondolsky*, Civ. No. 09-4647, 2010 WL 2667427, at *3 (D.N.J. June 28, 2010) ("[E]ven

where human error may serve as a triggering event for an exchange of primary jurisdiction, subsequent conduct by state and federal authorities may acknowledge a return to the status quo."); *Sanders v. Federal Bureau of Prisons*, No. 7:09cv00026, 2009 WL 1917093, at *4 (W.D. Va. June 30, 2009) (county jail officials' mistaken release of defendant to USMS physical custody did not alter state's primary jurisdiction), *aff'd*, 333 F. Appx. 791 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 2122 (2010).

      C.    *Nunc Pro Tunc* Designation.

      Petitioner also asks that he be given "*nunc pro tunc* jail credits" through the designation of a Tennessee state facility as his federal place of imprisonment from either September 27, 2006 (date of arrest) or August 2, 2007 (date of his "custody hearing").

      By statute, the BOP is responsible for designating where a federal sentence will be served and can designate "any available penal or correctional facility that meets minimum standards ... whether maintained by the Federal Government or otherwise ... that the [BOP] determines to be appropriate and suitable."  18 U.S.C. § 3621(b).  This statute vests the BOP with "broad discretion" to choose the location of a federal defendant's imprisonment. *Fegans v. United States*, 506 F.3d 1101, 1103 (8th Cir. 2007).  When a defendant is already serving a state sentence at the time of a federal sentencing, the BOP has "the practical power 'to make the federal sentence run concurrently [with the existing state sentence] by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence.'"  *Id.* (quoting *Romandine v. United States*, 206 F.3d 731, 738 (7th Cir. 2000)).  BOP policy requires that an inmate's request for presentence credit toward a federal sentence for time spent in service of a state sentence be considered as a request for *nunc pro tunc* designation.  BOP Program Statement

14

5160.05, at 5-6.  While under no obligation to grant such a request, the BOP is to consider the language of the federal and state judgments, the state sentence data record to include jail credit, and "any other pertinent information relating to the federal and state sentences." *Id.*  A *nunc pro tunc* designation of a state institution as the place to serve a federal sentence "shall be made only when it is consistent with the intent of the sentencing Federal court, or with the goals of the criminal justice system." *Id.* at 1.  Judicial review of the BOP's decision regarding *nunc pro tunc* designation is limited to determining if the BOP abused its "substantial discretion under 18 U.S.C. § 3621," and "substantial deference" must be afforded to the BOP's decision.  *Fegans*, 506 F.3d at 1105.

Here, the Court cannot find that the BOP abused its discretionary authority by declining to make a *nunc pro tunc* designation of a Tennessee state facility as the place for Petitioner to serve his federal sentence.  As stated, in response to Petitioner's request for presentence credit, the BOP evaluated his case and determined that he was not entitled to a *nunc pro tunc* designation pursuant to *Barden v. Keohane* because his state sentence was imposed before the federal sentence.  *Barden* held that the BOP has the authority to make a *nunc pro tunc* designation that has the effect of making a federal sentence concurrent to a **later-imposed** state sentence, a situation where the federal district court lacks the power to order concurrency.  *Barden*, 928 F.2d at 483-84; *see Fegans*, 506 F.3d at 1104.

The BOP also noted in its worksheet and in Petitioner's administrative appeals that there were no judicial recommendations regarding concurrent/consecutive service.  When a federal defendant is already subject to an undischarged term of imprisonment, the federal sentencing court is expressly authorized by statute to make the federal sentence run

15

concurrently with or consecutively to the undischarged term. *Fegans*, 506 F.3d at 1104; *see* 18 U.S.C. § 3584(a).   However, under the same statute, "[m]ultiple terms of imprisonment imposed at different times **run consecutively unless the court orders that the terms are to run concurrently**."  BOP policy echoes the statutory language.  *See* BOP Program Statement 5880.28, at 1-32 (§ 3584(a) "allows the court flexibility in sentencing when multiple terms of imprisonment are imposed and codifies the rules to follow if the court remains silent"); *id.* 5160.05, at 2-3 ("When there is a previously imposed sentence ... in existence at the time of federal sentencing, and the federal judge does not state whether multiple terms of imprisonment are to run consecutively to or concurrently with one another, the sentences run consecutively.")

In light of § 3584(a)'s clear language, established BOP policy, and the Tennessee federal court's silence on the concurrency issue, the BOP did not abuse its discretion in refusing to make a *nunc pro tunc* designation which would have the effect of making Petitioner's federal sentence run concurrently with the Tennessee state sentence.

Petitioner asserts that the federal sentencing judge's recommendation that he be given presentence credit for time served in state custody indicates that he intended the federal and state sentences to run concurrently.  As stated, the federal court had the power to make the sentences concurrent, but did not do so.  Even if the federal court was unaware of the existing state probation-violation sentence at the time of federal sentencing, Petitioner brought it to the court's attention in January 2010 by letter again requesting presentence credit, and the court still declined to take any action, deferring to the BOP (*see* doc. 13-1, at 79 [entries #43-44]).

From the documents submitted by the parties, it appears that the BOP adequately reviewed Petitioner's request for *nunc pro tunc* designation and acted in accordance with its procedures and the governing statutes in determining that such a designation was not appropriate.   Under these circumstances and given the Court's limited and deferential scope of review, Petitioner is not entitled to federal habeas relief on this issue.

In support of his claims, Petitioner cites *Barden*, *McCarthy v. Doe*, 146 F.3d 118 (2d Cir. 1998), *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971), and *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993) (*see* doc. 1, at 6; doc. 13-1, at 1-2).   *Barden* and *McCarthy* are inapposite as they involved federal sentences, followed by a state sentence.   *Willis* and *Kayfez*, providing the basis for an exception to § 3585(b)'s rule against double credit, are inapplicable as they involved concurrent state and federal sentences.   *See Lemons v. Quintana*, Civ. No. 08-87, 2010 WL 4388066, at *9, n.12 (W.D. Pa. 2010); BOP Program Statement 5880.28, at 1-22 to 1-23 (recognizing *Willis/Kayfez* exceptions).

III.

Petitioner's challenge to Respondent's computation of his federal sentence is without merit.   Accordingly, this 28 U.S.C. § 2241 petition for writ of habeas corpus (doc. 1) should be **denied, dismissing this action in its entirety with prejudice.**

DATED this 3rd day of February, 2011.

_____
UNITED STATES MAGISTRATE JUDGE